39 C.C.P.A. (Patents)

**Application of SKOGSEID.**

**No. 5870.**

United States Court of Customs and Patent Appeals.

April 8, 1952.

Wenderoth, Lind & Ponack, Washington, D.C., (E. B. Batchelder and Abraham A. Saffitz, Washington, D.C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, C. J., and JACKSON, O'CONNELL, JOHNSON, and WORLEY, JJ.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting one of the claims in appellant's application, serial No. 623,881, for a patent "For a Process For Producing Potassium Salts From Solutions, Particluarly Sea Water, Salt Lakes and Salt Lyes." Two claims were held allowable by the Primary Examiner.

The appealed claim reads: "12. In a process for the production of potassium compounds from potassium-containing solutions by means of ion exchangers, the step which comprises conducting the solution through an ion exchanger comprising highly nitrated secondary aromatic amines bound together in macromolecules."

The claim was rejected as not disclosing subject matter regarded patentable over a Norwegian patent, No. 63,914, granted February 13, 1940, and published June 1, 1942.

It appears from appellant's application, filed October 22, 1945, that he is a subject of the Kingdom of Norway, and, as we understand the record, he was the inventor of the subject matter for which the Nor-

wegian patent cited as a reference was granted.

All the claims of the Norwegian patent are process claims, as are the two claims which stand allowed and the appealed claim,

### Appealed Claim

"12. In a process for the production of potassium compounds from potassium-containing solutions by means of ion exchangers, the step which comprises conducting the solution through an ion exchanger comprising highly nitrated secondary aromatic amines bound together in macromolecules."

supra, in the instant United States application.

For purposes of comparison, we here quote the appealed claim and the claims of the Norwegian patent in parallel columns.

### Patent Claims

"1. Process for producing potash from thin solutions, e.g., sea water, characterized thereby, that there is added to the solution an easily soluble salt, e.g., a calcium salt, of a highly nitrated secondary aromatic amine, so that hard-to-dissolve potassium salt is formed, which is precipitated and filtered off.

"2. Process as cited in claim 1, characterized by the use of an easily soluble salt of hexanitromethyldiphenyl amine.

"3. Process as cited in claim 1, characterized by the use of an easily soluble salt of pentanitromethyldiphenyl amine.

"4. Process as cited in claim 1, characterized by the use of an easily soluble salt of highly nitrated dinaphthyl amine or phenylnaphthyl amine or the homologs of these compounds."

It will be observed that potash (which is a potassium compound) is the ultimate material produced by the respective processes of the patent and the application, and that the patent claims specify "thin solutions, e. g., sea water" as the source material from which the potash is produced, while claim 12 designates "potassium-containing solutions" as such source material.

So far as the respectively named source materials are concerned, they seem to be substantially the same; that is to say, the "sea water" named in the patent claims is a "potassium-containing solution."

The brief on behalf of appellant before us in the course of its discussion of the errors alleged as reasons of appeal, states:

Claim 12 of the application is based on two facts,

"1. that an ion exchanger is used, and

"2. that the ion exchanger is potassium selective, viz. that it has a relatively greater power of binding to itself potassium ions than other cations present, such as sodium, calcium and magnesium ions."

With respect to the ion exchanger feature by means of which the product is said to be produced, the process step is asserted in the claim to be that which "comprises conducting the [potassium-containing] solution through an ion exchanger comprising highly nitrated secondary aromatic amines bound together in macromolecules."

This means, as we understand the phraseology, that the ion exchanger through which the solution is forced consists of a highly nitrated secondary aromatic amine of the kind described.

The patent claims, instead of providing for *passing through an ion exchanger* the potassium-containing solution, provide for *adding to* the solution "an easily soluble salt, e. g., a calcium salt, of a highly nitrated secondary aromatic amine."

The Board of Appeals said: "We agree with the Examiner that the claim under consideration defines no invention over the practice disclosed in this [the Norwegian] patent because the only material difference between the actual practice recited in the

926

claim and that disclosed in the patent is that according to the former the brine is conducted through a body comprising the precipitating agent while according to the latter, the precipitating agent is introduced into the brine. We are of the opinion that this modification of the practice disclosed in the Norwegian patent involves no invention, because no unobvious results are obtained thereby."

The foregoing obviously was based upon the following statements in the answer filed by the Primary Examiner in connection with appellant's appeal to the board: "The double decomposition set forth in the Norwegian patent involves an ion exchange. The potassium ions replace ions in the nitrated secondary amine which are subsequently regenerated by acidification of the resulting product and at the same time the nitrated aromatic amine is restored. *It is a well known procedure in the art to provide a bed of ion exchange material and passing a solution containing ions which are taken up by the ion exchange material and subsequently passing a regenerating solution through the ion exchange material to displace the ion removed from the first solution and regenerate the ion exchange material.* Although not definitely called for by the claims, to provide a bed of the nitrated aromatic amine disclosed in the Norwegian patent and pass a potassium ion containing solution therethrough in such quantities and flow rates as to cause the insoluble potassium complex to be precipitated in place of the original ion exchange material with subsequent acid regeneration to recover potassium values in solution and regenerate the nitrated aromatic amine in its original solid form merely adapts the teaching of the Norwegian patent with respect to materials involved to the accepted and well known manner of carrying out an ion exchange process." (Italics supplied.)

We do not find in the reasons of appeal any challenge of the correctness of the examiner's statement, and particular attention is directed to the sentence which we have italicized, which asserts, in effect, that it is old in the art to use ion exchangers by passing solutions through such exchangers. The record before us shows that the two claims held allowable by the Primary Examiner were allowed because of the character of the materials specifically defined in the claims as composing the ion exchangers and not because such potassium-containing solutions were "passed through" those specific materials.

The definition or description of the ion exchanger given in the appealed claim—"comprising highly nitrated secondary aromatic amines bound together in macromolecules"—is certainly quite broad, and, in our opinion, is not distinguishable in a patentable sense from the claims of the Norwegian patent.

The decision of the Board of Appeals therefore is affirmed.

Affirmed.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294 (c, d), Title 28 U.S.C. to participate in the decision and did so.